UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

TENNEH BLAMAH,

                                Plaintiff,

v.

STATE OF NEW YORK: NEW YORK
OFFICE OF THE STATE COMPTROLLER;
and THOMAS P. DiNAPOLI, in his official
capacity as State Comptroller,

                                Defendants.
-----------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

7:19-cv-9234 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Tenneh Blamah brings employment discrimination and retaliation claims against defendants Office of the New York State Comptroller ("OSC") and New York State Comptroller Thomas DiNapoli in his official capacity (collectively "Defendants") alleging that Defendants violated her rights under the United States Constitution (Count 1); 42 U.S.C. § 1981 (Count 2); 42 U.S.C. § 1983 (Count 3); the New York State Human Rights Law § 290, *et seq*. (Count 4); and the New York Civil Service Law § 75 for defamation and/or negligence, malicious prosecution, fraud, and breach of contract (Counts 5–7). (Doc. 1, "Compl." ¶¶ 119–163).

By motion dated November 8, 2019, Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and oppose Plaintiff's motion for a preliminary injunction.[1] (Docs. 13–15).

---

[1] On October 9, 2019, Judge Vincent L. Briccetti held an on-the-record conference to hear argument on Plaintiff's proposed order to show cause for a temporary restraining order and preliminary injunction. Judge Briccetti denied Plaintiff's request finding, *inter alia*, that Plaintiff had failed to demonstrate irreparable harm and set a briefing schedule for Defendants to oppose Plaintiff's motion for a preliminary injunction and to answer, move, or otherwise respond to Plaintiff's complaint. (Doc. 4).

For the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiff's motion for a preliminary injunction is denied.

## **BACKGROUND**

Plaintiff is of African ancestry and was employed as a Chief Examiner at OSC in OSC's Newburgh Regional Office. Compl. ¶¶ 10–11, 13. Plaintiff was responsible for managing and directing the audit program for the City of Yonkers and the City of Newburgh. *Id.* ¶ 17. In her role as Chief Examiner, Plaintiff managed a staff of approximately thirty professionals, consisting of Principal Examiners and Examiners in Chief. *Id.* ¶ 19. Principal Examiners review the audits conducted by the Examiners in Chief before the audits are submitted to the Chief Examiner for review. *Id.* ¶¶ 23–24. Once the Chief Examiner has reviewed the audit report, the audit report is sent to the Editing Unit and then it is sent to the Audit Director for additional review and approval. *Id.* ¶ 24.

Plaintiff alleges "that she is being scapegoated for two (2) very public and embarrassing failures relating to certain audits that either resulted in a highly publicized arrest of a staff member at a local government agency or required that another regional office step in to restart an audit when it was discovered that the assigned auditor had interviewed with, been hired by, and started working for the same local agency that he was auditing." *Id.* ¶ 32. Plaintiff further claims that other persons who are members of her protected class who have "been appointed to high-level managerial positions within the State also have been removed from their posts for spurious reasons while similarly situated persons outside her protected classes are absolved of responsibility during the same time periods" and that Plaintiff is being subject to disparate discipline compared to a white employee. *Id.* ¶¶ 33–34.

The Court will briefly describe the two audits for which Plaintiff faced disciplinary proceedings. The first audit ("Audit A"), which began in 2017, involved an audit of a fire counsel and a group of fire companies. *Id.* ¶ 37. One of the objectives of the audit was to determine whether the disbursement of monies from the foreign fire insurance ("FFI") fund was accurate. *Id.* ¶ 39. After the audit was conducted and Plaintiff submitted the draft audit report to the Editing Unit, Plaintiff learned in an informal conversation with the Chief of Forensic Audits for OSC's Division of Investigations that there was a potential issue with the audited agency because someone had turned themselves in to the police. *Id.* ¶¶ 43–44. Plaintiff contacted her supervisor to inform him that she had become aware of a potential issue related to the audit. *Id.* ¶ 51. Ultimately, Plaintiff learned that the police had received a complaint that disbursements from the FFI fund were improperly distributed and that the police had referred the complaint to the District Attorney's Office. *Id.* ¶ 56. Plaintiff then received a call from Gabriel Deyo, then Deputy Comptroller of the Division of State Government Accountability within OSC, who told Plaintiff that she was going to be fired. *Id.* ¶ 58. Plaintiff alleges that "Deputy Commissioner Deyo targeted Plaintiff for termination although she was not directly involved in Audit A." *Id.* ¶ 66.

The second audit ("Audit B"), which began around April 2018, involved a financial condition audit of a local agency. *Id.* ¶¶ 68–70. After the auditors completed their field work, Plaintiff learned that one of the auditors was simultaneously working for the audited local government as treasurer. *Id.* ¶ 74. The auditor's dual employment at OSC and at the audited local government "appeared to constitute an impairment threat, or a conflict of interest, which would jeopardize confidence in the results of Audit B." *Id.* ¶ 76. Ultimately, the auditor resigned from OSC. *Id.* ¶ 81.

On February 26, 2019, Plaintiff received an interrogation notice informing her that she was potentially subject to discipline related to Audit A. *Id.* ¶ 88. The interrogation was held on March 5, 2019 and was conducted by Labor Relations Specialists in OSC's Labor Relations Unit. *Id.* ¶ 89. On March 6, 2019, Plaintiff received an interrogation notice related to Audit B. *Id.* ¶ 90. On March 15, 2019, OSC issued a Notice of Discipline for Audit A and proposed that Plaintiff be terminated. *Id.* ¶ 91. On March 28, 2019, the interrogation related to Audit B was held and again was conducted by Labor Relations Specialists in OSC's Labor Relations Unit. *Id.* ¶ 92. On April 10, 2019, Plaintiff received a Notice of Discipline related to Audit B. *Id.* ¶ 93. On April 11, 2019, Plaintiff was suspended without pay for thirty days and then was placed on paid administrative leave, commencing May 12, 2019. *Id.* ¶ 94.

Plaintiff alleges that the interrogations violated her federal due process rights and New York State's Civil Service Law because "[t]he procedures used to notify Plaintiff that she was subject to discipline and was required to submit to an interrogation failed to provide specific information about the basis of the investigation or the offense which prompted the action against her." *Id.* ¶ 96–98. Plaintiff also alleges that the manner of questioning during the interrogations "was aggressive and confusing, forcing Plaintiff to concede certain points of contention under duress, [and that] Plaintiff was [] placed at an unfair advantage [sic] as she was often tag-teamed and questioned by more than one Labor representative at a time." *Id.* ¶ 100. Furthermore, Plaintiff alleges other procedural deficiencies in OSC's interrogation process including a failure to include necessary witnesses, insufficient evidence to constitute that Plaintiff committed a "substantial offense," and the exclusion or fabrication of material facts. *Id.* ¶¶ 103–106. Finally, Plaintiff believes "that the disciplinary process was heavily biased" because "[t]he individual Labor Relations employees who represented [OSC] and participated in the disciplinary process were the

4

same administrative staff who conducted the investigation, [and] handled other attendant issues related to Plaintiff's attendance during the disciplinary hearing." *Id.* ¶ 108.

On September 5, 2019, while Plaintiff's disciplinary process was still pending, OSC appointed a new Chief Examiner to Plaintiff's old position. *Id.* ¶ 115. Plaintiff alleges that this resulted in her *de facto* termination prior to the conclusion of her disciplinary process, and that "the procedural violations during the purported investigation of OSC's Labor Relations and the subsequent and pending disciplinary hearing were slanted and intended to terminate Plaintiff based on Mr. Deyo's personal animus and bias." *Id.* ¶¶ 117–118. On October 6, 2019, Plaintiff commenced this action against Defendants.

## **STANDARD OF REVIEW**

I. <u>Fed. R. Civ. P. 12(b)(1)</u>

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must

5

dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. N.Y.C. Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).[2]

II. Fed. R. Civ. P 65

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713, 716 (S.D.N.Y. 2016) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). To receive a preliminary injunction, a plaintiff must demonstrate: "1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and 3) that the public's interest weighs in favor of granting an injunction." *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 811–12 (S.D.N.Y. 2016) (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir.2010)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *C.D.S.*, 217 F. Supp. 3d at 716 (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)). "To satisfy the irreparable harm

---

[2] Defendants also move to dismiss Plaintiff's claims on 12(b)(6) grounds arguing that Plaintiff has failed to meet her minimal pleading standards, *see* (Doc. 14, "Defs.' Mot. to Dismiss" at 13–18), and that Plaintiff's claims are barred by the *Younger* abstention doctrine, *see id.* at 12–13. Because the Court holds that Plaintiff's claims should be dismissed in their entirety on 12(b)(1) jurisdictional grounds, the Court does not address Defendants' other arguments.

requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* at 716–17 (*Grand River*, 481 F.3d at 66).

## ANALYSIS

I. <u>Sovereign Immunity as to Money Damages Relief</u>

Defendants argue that the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims because Defendants are immune from suit under the Eleventh Amendment. Defs.' Mot. to Dismiss at 8. Generally, "the Eleventh Amendment bars suits against states and their officials." *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). The immunity enjoyed by states "extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*, 25 F. Supp. 3d 459, 465 (S.D.N.Y. 2014) ("Sovereign immunity as guaranteed by the Eleventh Amendment to the Constitution bars suits for damages in federal court against states, state agencies and state officials acting in their official capacity."). There are, however, limited exceptions to Eleventh Amendment sovereign immunity. An individual may bring a claim against the state or an arm of the state when a state has waived its sovereign immunity or where Congress has abrogated a state's sovereign immunity through § 5 of the Fourteenth Amendment. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Defendants argue that neither of these exceptions is applicable in the case at bar. The Court agrees.

Defendant OSC, the Office of the State Comptroller, is an arm of the state. *See John v. Comptroller Office of New York*, No. 18-CV-5826, 2019 WL 1243810, at *2 (E.D.N.Y. Mar. 18, 2019). First, Plaintiff has alleged no facts that indicate that OSC has waived its immunity or consented to be sued by Plaintiff. Second, case law makes clear that Congress has not abrogated sovereign immunity under 42 U.S.C. § 1981 or 42 U.S.C. § 1983.[3] *Wang v. Office of Prof'l Med. Conduct, N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009) (finding § 1981 claim precluded by Eleventh Amendment immunity); *Johnson v. New York*, 21 F. App'x 41, 43 (2d Cir. 2001) (finding § 1983 claim precluded by Eleventh Amendment immunity); *Cajuste v. Lechworth Developmental Disabilities Serv.*, No. 03-CV-0161, 2005 WL 22863, at *3 (S.D.N.Y. Jan. 5, 2005) ("Congress's enactment of § 1981 and § 1983 did not override the immunity that the states and their agencies enjoy under the Eleventh Amendment.").

Therefore, the Court finds it does not have subject matter jurisdiction over any of Plaintiff's federal law claims (Counts 1–3) against defendant OSC. The Court also finds that defendant DiNapoli sued in his official capacity is similarly shielded from Plaintiff's federal law claims by Eleventh Amendment immunity. *See Roniger v. McCall*, 22 F. Supp. 2d 156, 161 (S.D.N.Y. 1998) (holding that money damages claims against state officials are barred by the Eleventh Amendment). Furthermore, Plaintiff's state law claims (Counts 4–7) against Defendants are barred by the Eleventh Amendment. *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997) (finding Plaintiff's state law claims fail on Eleventh Amendment grounds because such claims "cannot be brought against a state even when [they have] been appended to a federal Constitutional claim."); *Fry v. McCall*, 945 F. Supp. 655, 660 (S.D.N.Y. 1996) (finding that plaintiff's state law claims

---

[3] Plaintiff's complaint appears to allege a freestanding claim under the Fifth and Fourteenth Amendments. *See* Compl. at 1, ¶¶ 119–25. However, § 1983 is "the vehicle by which private citizens may seek recovery for violations of other federal laws or the United States Constitution." *Buntin v. City of New York*, 395 F. Supp. 2d 104, 107 (S.D.N.Y 2005). Therefore, the Court will construe Plaintiff's Fifth and Fourteenth Amendment claims as claims under § 1983.

seeking monetary damages from a state official sued in his official capacity were barred by Eleventh Amendment). Accordingly, all of Plaintiff's claims (Counts 1–7) are dismissed.

   a. Sovereign Immunity as to Injunctive Relief

While Plaintiff appears to concede that Defendants have not consented to suit and that Congress has not abrogated the State's sovereign immunity under § 1981 or § 1983, (Doc. 22, "Pl.'s Mem. of Law in Opp'n" at 7), Plaintiff argues the Court nonetheless has subject matter jurisdiction to hear claims against defendant DiNapoli based on the *Ex parte Young* Doctrine. *Ex parte Young* is an exception to Eleventh Amendment immunity which permits a plaintiff to sue a state official acting in his official capacity for prospective, injunctive relief from violations of federal law. *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). The *Ex parte Young* Doctrine is only applicable in cases in which the Plaintiff alleges "a violation of federal law by a state official [that] is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). If the injunctive relief sought by a plaintiff would not "directly end[] the violation of federal law," but rather "is intended indirectly to encourage compliance with federal law through deterrence," *Ex parte Young* does not apply. *Id.*

For example, a plaintiff who merely asserts she has suffered "discrete acts of past discrimination and retaliation by [a] defendant" has not demonstrated an ongoing constitutional violation. *Pierre v. New York State Dep't of Corr. Servs.*, No. 05-CV-0275, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (quoting *Pasternak v. Baines,* No. 00-CV-0369, 2006 WL 2570982, at *9 (W.D.N.Y. Sept. 5, 2006)). Furthermore, to state a claim for injunctive relief, *Ex parte Young* requires that a plaintiff demonstrate that she is in fact entitled to such relief by showing, *inter alia*, a likelihood of success on the merits and irreparable harm. *M.K.B. v. Eggleston*, 445 F. Supp. 2d

400, 437 (S.D.N.Y. 2006); *Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087, 1096 (S.D.N.Y.1989).

To determine whether the *Ex parte Young* Doctrine permits a plaintiff to avoid an Eleventh Amendment immunity bar, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *City of Shelton v. Hughes*, 578 F. App'x 53, 55 (2d Cir. 2014) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002)). If a Plaintiff fails to plead an ongoing violation of federal law, the Court may determine that the "[p]laintiff[']s claim for injunctive relief fails at the first step of this 'straightforward inquiry.'" *Pierre*, 2009 WL 1583475, at *18. Because the Court finds that Plaintiff has failed to plead an ongoing violation of federal law, the Court holds that Plaintiff's claims do not satisfy the *Ex parte Young* exception to Eleventh Amendment immunity.

Plaintiff asserts that "[t]he *Ex parte Young* exception applies to the instant case at this juncture because Plaintiff primarily seeks prospective equitable and declaratory relief for her claims against Defendants." Pl.'s Mem. of Law in Opp'n at 7. Specifically, Plaintiff points to her prayer for relief requesting, *inter alia*, that the Court "[r]einstate Plaintiff to the job with the salary, position, seniority, union tenure, title and/or pay grade that she would hold but for defendants' unlawful violation of Plaintiff's constitutional and due process rights and unlawful discrimination and retaliation of Plaintiff." Compl. at 24 ¶ C. Plaintiff's assertion that she "primarily seeks" prospective relief is belied by her complaint. While Plaintiff's complaint does state that she seeks "declaratory, injunctive and equitable relief; compensatory and punitive damages; costs and attorneys' fees," *id.* at 1, none of Plaintiff's seven causes of action request injunctive relief. Each of Plaintiff's claims of relief speak only to past practices and alleged past injustices. *See, e.g.*, *id.*

10

¶ 122 ("Defendants have violated Plaintiff's due process rights"), *id.* ¶ 128 ("Defendants…engaged in purposeful and/or disparate discrimination and condoned a hostile work environment"), *id.* ¶ 131 ("Defendants' policy and practice of discrimination and retaliation had a detrimental impact"). While a portion of plaintiff's prayer for relief could be construed as reflecting a request for injunctive, prospective relief, s*ee id.* at 24 ¶¶ B–D, Plaintiff's seven claims for relief allege only that Plaintiff has suffered "pecuniary losses," *id.* ¶¶ 125, 132, 136, 146, 153, 159, 163, and nowhere in Plaintiff's complaint does she make reference to the elements of an injunctive or declaratory claim for relief. For example, Plaintiff does not provide any argument for why she will be irreparably harmed absent injunctive relief or whether the balance of equities tips in her favor.

Defendants argue that Plaintiff cannot utilize the *Ex parte Young* exception to sovereign immunity because Plaintiff has failed to demonstrate that she is entitled to the relief she seeks. (Doc. 25, "Defs.' Reply Mem. in further support of Mot. to Dismiss" at 2). The Court agrees. Mere conclusory language stating that a Plaintiff is entitled to prospective, injunctive relief in a wherefore clause does not make it so. *Cf. Pierre*, 2009 WL 1583475, at *18.

Interpreting Plaintiff's complaint liberally, Plaintiff identifies three separate alleged violations of federal law: (1) procedural deficiencies in OSC's disciplinary process in violation of the Fifth and Fourteenth Amendment, Compl. ¶¶ 119–25; (2) discrimination based on Plaintiff's membership in a protected class, *id.* at ¶¶ 126–36; and (3) retaliation based on Plaintiff engaging in protected activities, *id.* None of these allegations amount to an ongoing violation of federal law sufficient to satisfy *Ex parte Young*, however.

First, as to the alleged procedural deficiencies is OSC's disciplinary proceeding, this is not the proper venue for Plaintiff to bring her claims. Rather, "[i]t has long been the law in this Circuit

that the availability of Article 78 as post-deprivation remedy bars claims for violations of procedural due process." *Cieslinski v. Cassino*, 78 F. Supp. 2d 234, 237 (S.D.N.Y. 1999) (citing *Hellenic–American Neighborhood Action Committee v. City of New York*, 101 F.3d 877 (2d Cir. 1996)); N.Y. C.P.L.R. § 7803.[4]

Second, as to Plaintiff's allegations that she was subject to discrimination based on her membership in a protected class, *see, e.g.*, Compl. ¶ 128, the Court finds that Plaintiff has not demonstrated an ongoing violation of federal law. The only allegations in Plaintiff's complaint which even hint at the possibility of discrimination are that (1) other members of her protected class have been terminated for spurious reasons and (2) that she was subject to disparate discipline compared to a white employee.[5] *Id.* ¶¶ 33–34. Even assuming Plaintiff's allegations amount to a violation of federal law, she merely alleges "that federal law has been violated at one time or over a period of time in the past." *See Papasan*, 478 U.S. at 277–78. Therefore, Plaintiff has not alleged an ongoing violation of federal law as to her employment discrimination claim.

Third, Plaintiff alleges that she faced retaliation based on her engagement in protected activities. S*ee, e.g.*, Compl. ¶ 128. However, Plaintiff's complaint does not include any allegation that she faced retaliation. Indeed, Defendants argue that "Plaintiff's Complaint and Memorandum of Law are completely devoid of any allegations of retaliation." Defs.' Mot. to Dismiss at 17. Plaintiff in response suggests that leave to amend should be granted because her unripe Title VII claim includes additional support for her allegations. Pl.'s Mem. of Law in Opp'n at 19–20.

---

[4] Defendants have represented to the Court that Plaintiff's disciplinary proceeding has concluded, and Plaintiff has been terminated. Defs.' Reply Mem. in further support of Mot. to Dismiss at 3 n.1. If Defendants' representation is accurate, there can be no ongoing violation with respect to the alleged procedural deficiencies identified by Plaintiff as the allegations would merely be related to past wrongdoing. *See Russo v. City of New York*, No. 02-CV-369, 2003 WL 1571707, at *1 (S.D.N.Y. Mar. 26, 2003) ("As far as injunctive relief is concerned, plaintiff's injury is in the past and there is no indication that he could possibly be subjected to the same difficulty in the future.").

[5] Defendants indicate that Plaintiff is referring to an employee who was disciplined by OSC in 2002, more than fifteen years before Plaintiff was subject to disciplinary proceedings. Defs.' Mot. to Dismiss at 16 n.10. Plaintiff, in her opposition, does not rebut Defendants' assertion.

("Subsequent to the commencement of the instant action, Plaintiff delineates several protected activities in her charge of discrimination for her Title VII claim, which is not yet before the Court. Consequently, Plaintiff seeks to amend her complaint….").

Pursuant to Fed. R. Civ. P. 15(a)(2), "leave to amend generally will be granted unless…the amendment would be futile." *Correction Officers' Benevolent Ass'n, Inc. v. City of New York*, 415 F. Supp. 3d 464, 468 (S.D.N.Y. 2019); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Plaintiff is correct that under certain situations "claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar." *See State Employees Bargaining Agent Coal.*, 494 F.3d at 96. Therefore, if properly pled, a claim for reinstatement could satisfy the *Ex parte Young* exception. Plaintiff will be given an opportunity to amend her complaint to the extent that a claim brought against defendant DiNapoli sued in his official capacity alleges an ongoing constitutional violation and alleges that defendant DiNapoli has the authority to provide the prospective, injunctive relief Plaintiff seeks.

b. <u>Plaintiff's Motion for a Preliminary Injunction</u>

On October 16, 2019, Plaintiff submitted her Motion for a Preliminary Injunction and Temporary Restraining Order. (Doc. 8, "Pl.'s Mot. for a Prelim. Inj. and TRO"). Plaintiff asked the Court "to enjoin the pending administrative disciplinary process." *Id.* at 13. Judge Briccetti denied Plaintiff's request finding that Plaintiff had failed to demonstrate irreparable harm. (Doc. 27, "Prelim. Inj. H. Tr. (Oct. 9, 2019)" at 24:12). Because Plaintiff may amend her complaint, a ruling on the preliminary injunction motion is appropriate at this time.

Since the hearing before Judge Briccetti on October 9, 2019, Plaintiff has made no additional showing that she will suffer irreparable harm if the Court does not intervene at this time.

Additionally, for the reasons stated separately herein, Plaintiff has failed to demonstrate a likelihood of success on the merits or a balancing of the equities in her favor. Accordingly, Plaintiff's motion for a preliminary injunction is denied.

## **CONCLUSION**

Based on the forgoing, Defendants' motion to dismiss is granted and Plaintiff's seven claims for relief are dismissed in their entirety. However, Plaintiff is granted leave to amend her complaint within 30 days of this Order pursuant to Fed. R. Civ. P. 15(a)(2) to the extent that Plaintiff can assert claims against defendant DiNapoli for prospective, injunctive relief based on allegations that she is suffering ongoing constitutional harm, and in accordance with the parameters set forth herein.

The Clerk of the Court is instructed to terminate the motion (Doc. 13). If an amended complaint is not docketed within 30 days from the date of this Order, the action shall be dismissed, *see* Fed. R. Civ. P. 41(b), and the Clerk will be instructed to discontinue this action and terminate all proceedings.

**SO ORDERED:**

Dated: New York, New York
      April 8, 2020

                                                  Philip M. Halpern
                                            United States District Judge